No. 55.—THOMAS W. MILLER, administrator, &c. plaintiff in
error, *vs.* WM. ANDRES, defendant in error.

[1.] *At Law, in England,* no action can be maintained by the survivor, on a
note given by one of the partners to the firm of which he was a member;
the contract is available only in Equity.

[2.] Under the 53d section of the Judiciary Act of 1799, conferring Equity
powers upon the Superior Courts, and the amendatory Statute of 1820,
which allows parties, *in all cases,* to institute their action upon the Com-
mon Law side of the Court, when they conceive that they can establish
their claim, without resorting to the conscience of the defendant, a suit *at
Law* may be brought by the survivor, to recover a note given by a deceased
partner to the firm of which he was a member.

[3.] But such a party, by shifting the forum, cannot relieve himself from the
burden imposed in Equity, of showing that, after the partnership concerns
are wound up, the amount of the note given the firm, is actually due and
owing, upon a proper adjustment of the accounts and dealings between
the firm and the deceased member.

Debt and certiorari, in Richmond Superior Court.   Decis-
ion by Judge STARNES, in Chambers, May 4th, 1853.

William Andres, suing for the use of the Bank of Bruns-
wick, brought an action of assumpsit, in the Court of Common
Pleas for the City of Augusta, against Thomas W. Miller, as
the administrator of Francis Spears, deceased, upon an in-
strument, of which the following is a copy:

"$102.24.                    AUGUSTA, October 14th, 1848.
"One day after date, I promise to pay Andres & Spears
one hundred and two 24-100 dollars, balance on account, for
value received.
      [Signed,]                    FR. SPEARS."

Andres brought this suit, as the survivor of the late firm of
Andres & Spears, which was composed of himself and Francis
Spears, deceased, the defendant's intestate.

At the December Term, 1852, of the Court of Common

Pleas, which was the trial term of the case, the plaintiff took a nonsuit, subject to the opinion of the Court, to be rendered at Chambers, upon a state of facts agreed upon by the parties, as follows:

That a partnership had existed between Andres, the plaintiff, and Spears, the deffendant's intestate, during the existence of which the note now sued on was made by said Spears, in favor of the firm; that Spears was dead, and defendant was his regularly qualified administrator; that the note sued on was correctly set forth in the declaration, and had never been paid; that the estate of Spears was able to respond to all its liabilities, and that for the purposes of the argument of this case, Andres, the plaintiff, was to be considered insolvent; and that the firm of Andres & Spears continued in existence long after the date of the note now sued on.

Upon hearing argument, the Judge of the Court of Common Pleas refused to reinstate the case; and, thereupon, a certiorari was sued out, returnable to the January Term, 1853, of the Superior Court of Richmond County.

When the case was called in the Superior Court, a consent rule was had, that the certiorari be argued, and the decision made thereon, at Chambers. Judge *Starnes*, after hearing argument, sustained the certiorari, reversed the decision of the Court below, and ordered a new trial.

From that decision a writ of error is brought to this Court.

A. J. & T. W. MILLER, for plaintiff in error.

JOHN K. JACKSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Notwithstanding the ingenious argument submitted by Mr. Jackson, the counsel for the defendant in error, to the contrary, we think it well settled that, at Common Law, this action could not be maintained. The doctrine upon this sub-

ject is thus clearly and explicitly enunciated and reiterated by Judge *Story.*

"Another illustration of the beneficial result of Equity jurisdiction in cases of partnership, may be found in the not uncommon case of two firms dealing with each other, where some or all of the partners in one firm are partners with other persons in the other firm. Upon the technical principles of the Common Law in such cases, no suit can be maintained *at Law* in regard to any transactions or debts between the two firms; for in such suit, all the partners must join and be joined, and no person can maintain a suit against himself and others. The objection is, at Law, a complete bar to the action. *Nay, even after the death of the partner or partners belonging to both firms, no action upon any contract or mutual dealing, ex contractu, is maintainable by the survivors of one firm against those of the other firm; for in legal view, there never was any subsisting contract between the firms, as a partner cannot contract with himself.*" 1 *Story's Eq. Jur.* §679.

It will be perceived that the reason assigned here against this proceeding, is one rather technical than otherwise. But the same author, in his work on Partnerships, gives this additional reason, which is more satisfactory, because it is not founded upon technical principles, namely, "that until all the partnership concerns are ascertained and adjusted, it is impossible to know whether a partner be a debtor or a creditor of the firm, and that this knowledge is unattainable at Law." *Story on Partnership,* §221.

I repeat, then, that in England it is clear, that Francis Spears could not contract a debt with the firm of Andres & Spears, of which he was a partner, which could be enforced *at Law* by William Andres, the surviving partner, against the administrator of Francis Spears, the deceased partner; and that resort must be had to a Court of Equity, where all the parties in interest could be brought before the Court, as plaintiffs or as defendants, and where a full and final adjustment could be had of all the concerns between the parties. For in this form all contracts of a moral and legal nature are deemed

Miller *vs.* Andres.

obligatory, though void at Law. Courts of Equity in such cases are said to look behind the form of the transactions to their substance, for the purpose of administering substantial justice. 1 *Story's Eq. Ju.* §680.

[2.] A suit *at Law* may be brought in this State, however, to enforce this contract, under the 53d section of the Judiciary Act of 1799, conferring Equity powers upon our Superior Courts, and the Amendatory Statute of 1820, which allows parties *in all cases,* to institute their action upon the Common Law side of the Court, where they *conceive* that they can establish their claim, without resorting to the conscience of the defendant.

[3.] Conceding, however, that the party is entitled to his *legal* remedy, can he recover this note without first showing, as he would have to do in Equity, that it is properly due, after all the partnership concerns between Spears and the firm of Andres & Spears are ascertained and adjusted? We think not. He cannot, by shifting the forum, relieve himself from this burden.

Another and an important inquiry is, whether, under the pleadings, as they now stand, namely, a simple action of debt upon the note, the plaintiff will be permitted to go into a full account of the partnership concerns? We submit this to the better judgment of the intelligent counsel who is managing this suit. If he should conclude that the pleadings are defective in this particular, they are of course amendable. And in this view of it, we have deemed it best, and so adjudge, not to sustain the nonsuit, but to retain the cause, and allow it to proceed.

Judgment affirmed.